IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

STATE FARM FIRE AND CASUALTY
COMPANY

    **Plaintiff,**

    v.      CIVIL NO. 4:13cv138

**TRUDY T. ROLLINS,**

**K.L.P., a minor, by and through her mother
and next friend TRACIE LOVEJOY,**

And,

**TRACIE LOVEJOY, individually as mother
and next friend of K.L.P., a minor,**

    **Defendants.**

## OPINION & ORDER

This matter comes before the Court upon the motion of State Farm Fire and Casualty Company's Motion for Summary Judgment against defendants. ECF No. 18. State Farm seeks by means of summary judgment, a declaratory judgment against the insured Trudy T. Rollins, K.L.P., and Tracie Lovejoy. In seeking this judgment, State Farm requests this Court declare that the State Farm Homeowners Policy in question excludes both personal liability coverage and medical payments to others coverage for the claims of Lovejoy and K.L.P because of the time of the incident of injury, K.L.P. was in the care of Rollins because of child care services.

For the reasons stated herein, this Court **FINDS** that under the plain meaning of the Homeowners Policy, K.L.P. and Lovejoy's potential claims are excluded under the unambiguous child care services exclusion of the Homeowners Policy. State Farm is entitled to judgment as a

1

matter of law under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. Accordingly, this Court **GRANTS** the Motion for Summary Judgment. ECF No. 18.

### I. PROCEDURAL HISTORY

On October 16, 2016, State Farm Fire and Casualty Company ("State Farm") filed a Complaint against Trudy T. Rollins ("Rollins"); K.L.P., a minor by and through her next friend Tracie Lovejoy; and Tracie Lovejoy ("Lovejoy"), individually and as mother and next friend of the minor K.L.P. ECF No. 1. In the Complaint, State Farm seeks declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. Compl.; ECF No. 1. On January 31, 2014, the Court appointed attorney Christopher J. Wiemken, Esq. as guardian *ad litem* for defendant K.L.P, a minor, pursuant to Rule 17 of the Federal Rules of Civil Procedure and Va. Code § 8.01-9. ECF No. 8.

This suit arises out of an incident which occurred July 12, 2013. On the day of the incident Rollins was caring for K.L.P. in Rollins' home when the family dog allegedly bit K.L.P. requiring medical treatment. ECF No. 19, Ex. 1 at 31. Through her mother, Lovejoy, K.L.P. retained counsel to pursue the claim. ECF No. 1, Ex. 1. At the time of the incident, Rollins held a Homeowners Policy (Policy No. 46-GU-5766-4) issued by State Farm. State Farm now seeks declaratory judgment stating that it is not responsible for any claims of Rollins, K.L.P. or Lovejoy. ECF No. 1 at ¶4. Jurisdiction for this claim is proper pursuant to 28 U.S.C. § 1332(a) and venue is good pursuant to 28 U.S.C. § 1391(b).

In the present motion, State Farm motions for the Court to enter an Order declaring that State Farm's liability coverage excludes personal liability (Coverage L) and medical payments to others coverage (Coverage M) for the claims in dispute. ECF No. 18. K.L.P., through her guardian *ad litem*, responded to the motion on April 18, 2016. ECF No. 23. Rollins responded on April 18, 2016. ECF No. 24. State Farm filed reply briefing April 22, 2016. The Court entered

default judgment against Lovejoy on April 26, 2016, binding her to final disposition of this suit. ECF No. 29. A hearing was held on the present motion on May 5, 2016, at which counsel for State Farm, Rollins, and K.L.P. presented arguments. This motion is now ripe for judgment.

## II. FACTS AS ALLEGED BY THE PARTIES

### A. THE PARTIES

State Farm Fire and Casualty Company seeks declaratory judgment in this action against three defendants regarding an incident arising July 12, 2013: (1) Trudy T. Rollins; (2) K.L.P., a minor by her next friend and mother Tracie Lovejoy; and, (3) Tracie Lovejoy, as mother of K.L.P. and in her individual capacity. Compl. at ¶ 1–5. The parties are as follows.

State Farm Fire and Casualty Company ("State Farm") is an Illinois corporation with its principal place of business located in Bloomington, Illinois, and a citizen of the State of Illinois. Compl. at ¶ 3. Trudy T. Rollins ("Rollins") is a resident of Poquoson, Virginia and a citizen of Virginia. Compl. at ¶ 4, Rollins Ans. At ¶ 4. K.L.P. is minor under the age of eighteen, by her mother and next friend Trace Lovejoy, as well as her guardian *ad litem*. K.L.P. Ans. at 1, ¶ 4. K.L.P. is a resident of Poquoson, Virginia, and a citizen of Virginia. Id. at ¶ 5. Tracie Lovejoy is the mother of K.L.P., a resident of Poquoson, Virginia, and a citizen of Virginia. Compl. at 5.

### B. THE HOMEOWNERS POLICY

The present suit seeks declaratory judgment regarding personal liability coverage and medical payments to others coverage under the Homeowners Policy issued by State Farm to Rollins, the insured. On the day of July 12, 2013, Rollins was a named insured under the subject Homeowners Policy (Policy No. 46-GU-5766-4) (hereinafter "Homeowners Policy") issued by State Farm. Compl. ¶ 4, Rollins Ans. ¶ 4. State Farm and Rollins agree that the Homeowners Policy attached to the Complaint was a true and accurate copy of the policy in effect at the time of the incident. Compl. at ¶ 12, ECF No. 1 at 3–4; Rollins Answer at ¶ 12, ECF 5 at 2.

3

The Homeowners Policy provided Personal Liability coverage under Coverage L to an insured, "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence...". Compl., Ex. 2 at 14; ECF No. 1, Ex. 4 at 20. Additionally, the Homeowners Policy provides for "Medical Payments to Others" under "Coverage M" which states, "We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury." Compl., Ex. 2 at 14; ECF No. 1, Ex. 4 at 20.

However, in the exclusions section of the Homeowners Policy, two particular exclusions are relevant to the present suit: (1) the exclusion of Coverage L and Coverage M for child care services, and (2) the exclusion of Coverage L and Coverage M for damages arising from business pursuits. The child care services exclusion states as follows:

> Coverage L and Coverage M do not apply to (i) Any claim made or suit brought against any insured by:
> (1) any person who is in the care of any insured because of **child care services** provided by or at the direction of:
>     (a) any insured
>     (b) any employee of any insured; or
>     (c) any other person actually or apparently acting on behalf of any insured;
>     or
> (1) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of
>     (a) any insured;
>     (b) any employee of any insured; or
>     (c) any other person actually or apparently acting on behalf of any insured.
> This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age.

Compl., Ex. 2 at 17; ECF No. 1, Ex. 4 at 23. The business pursuits exclusion states,

> Coverage L and Coverage M do not apply to: ... (b) bodily injury or property damage **arising out of business pursuits** of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply to: ...

4

> (3) incidental business activities of any insured for babysitting, caddying, law care, newspaper delivery and other similar activities...

Compl., Ex. 2 at 16; ECF No. 1, Ex. 4 at 22. The applicability of both the child care services exclusion and the business pursuits exclusion are contested in this declaratory judgment action.

### C.   CARE PROVIDED TO CHILDREN BY ROLLINS

Prior to providing care to K.L.P. the minor in the present suit, Rollins had already provided care for compensation to two other children, A.D. and P.R.H. ECF No.19 at ¶ 6–7, ECF No. 24 at ¶ 6–7. Rollins has consistently classified all care provided in her home to these children and K.L.P. as babysitting, however, for the purposes of determining the applicability of the exclusion this Court looks beyond the terminology used to the actual time and services provided by Rollins and has removed disputed terminology from the facts provided herein. It should be noted that the majority of the following facts are taken from a deposition of Rollins taken February 1, 2016, by State Farm with all counsel present. See ECF No. 19, Ex. 1. Rollins does not dispute the accuracy the entire deposition, however, she has presented a later dated, April 18, 2016 Affidavit in which she presents seemingly contradictory information on the dates in question and reclassifies some of the statements made during her deposition. ECF No. 24, Ex. 1. For the purposes the present motion the Court chooses to assume all corrections made in the affidavit are true, even though this Court is concerned whether support for these changes has been provided. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).

#### 1. Care for the Minor A.D.: Infrequent Care from November 2012 to May 2013

Rollins' care of A.D. preceded her care for both P.R.H. and K.L.P. At her deposition Rollins stated that in April 2012 A.D.'s mother[1] came to Rollins to ask for help with the care of A.D. during the day. ECF No. 19, Ex. 1 at 12. At that time, Rollins and the mother agreed that

---

[1] It should be noted that while A.D. is not related to Rollins, A.D.'s mother is married to Rollins' stepson. ECF No. 19, Ex. 1 at 14.

5

A.D. could come to Rollins' home for care at a rate of $15 per day. Id. Care of A.D. according to the deposition of Rollins was only as needed, and A.D. did not attend on a weekly basis. Id. at 13. State Farm contended that on the basis of the deposition that Rollins was a care provider for A.D., as needed, from April 2012 to Memorial Day of 2013. ECF No. 19 at 3. However, in Rollins' later affidavit, she corrected the care provided for A.D. ECF No. 24, Ex. 1. As Rollins states,

> I first sat for A.D. three days in November 2012, for which I was paid $15 per day. After November, 2012, I babysat A.D. on other occasions, without pay, when A.D.'s mother had doctor's appointments. I did not babysit A.D. for pay again until, at most, three days in April 2013, and then, at most, two days in May.

Id. at 2, ¶¶ 9-11. Around Memorial Day 2013 A.D. and her mother moved to a different state, after which Rollins no longer provided care. Id. at ¶ 12.

### 2. First Facebook Posting: March 18, 2013

In March 2013, Rollins began seeking additional children to add to her care for pay. On March 18, 2013, Rollins posted on Facebook the following:

> I am doing daycare in my home and have 3 children now but am looking for a few more, if you need or know of someone please give me a call, XXX-XXXX or XXX-XXXX. Thank you!

ECF No. 19, Ex. 3. At the hearing, Rollins' counsel contended this first posting was merely an announcement not an advertisement, however, the Court is unconvinced. Rollins' depositions discussed neither of the two additional children to A.D. that are mentioned in this posting, however, the Court accepts that it is possible the children were Rollins' relatives as she indicated grandchildren had also been in her care at various times.

### 3. Care for the Minor P.R.H.: Four Days per Week from Late March to July 2013

P.R.H., an infant who was unrelated to Rollins, started in the care of Rollins in late March 2013 at a rate of $25 per day. ECF No. 19, Ex. 1 at 17. It is unknown if the addition of P.R.H. was as a result of the March 18, 2013 Facebook post. Id. Rollins in her deposition discussed the care schedule for P.R.H. as somewhat inconsistent as P.R.H.'s mother did not work Mondays and other family members would sometimes provide for her care. Id. at 9. Rollins during her deposition estimated that P.R.H. was in her care "probably like three days a week," however, Rollins agreed to be available to the family every Tuesday through Friday from around 8:00 AM until early afternoon. Id.; ECF No. 24, Ex. 2 at 4.

This care was consistently available to P.R.H. and her family from late March 2013 until July 2013 with the exception of one week during which Rollins was unavailable due to the surgery of her husband, Dave Rollins. ECF No. 24, Ex. 2 at 4. In Rollins' later corrected Rollins' answers to interrogatories that accompanied her affidavit, "it is not remembered if there were any days, Tuesdays through Fridays, which were missed in May and June of 2013, and it is now remembered that babysitting in July did not begin until July 9." Id. It is notable here that P.R.H.'s care was not preplanned, but rather, that Rollins agreed to be consistently available to P.R.H. Rollins' only notice of when P.R.H. would be in her care was provided if P.R.H.'s mother would tell Rollins during pick up that P.R.H. would attend the next day. ECF No. 19, Ex. 1 at 18.

### 4. Second Facebook Posting: June 18, 2013

In June 2013, shortly after A.D. stopped receiving care in Rollins home and during the time P.R.H. was still receiving care, Rollins sought to add another child for pay to her daily schedule. ECF No. 19, Ex. 1 at 22. As she had previously done, Rollins decided to post to

7

Facebook. ECF No. 19, Ex. 3. On June 18, 2013, she posted a message on Facebook to her connections which stated,

> I am still looking for a couple more children to care for in my home in Poquoson, I will also do before and after school in the fall. My hours start at 6 am. if interested please give me a call on cell XXX-XXX-XXXX. Thanks!!!!!!!!!!

ECF No. 19, Ex. 3.

### 5. Care for the Minor K.L.P.: Weekdays from June 24, 2013 to July 12, 2013

Shortly after viewing the Facebook posting, Lovejoy contacted Rollins regarding the potential care of K.L.P. (age 7) and another child. ECF No. 19, Ex. 1 at 23–24. K.L.P. and Lovejoy were unrelated to Rollins, but had known her for a number of years. ECF No. 19, Ex. 4 at 6–7. During these discussions, Rollins and Lovejoy agreed that Rollins would provide care at a rate of $25 per day, and that Rollins would be able to receive the children in her home every week day. ECF No. 19, Ex. 1 at 26. During or shortly after these discussions, Lovejoy decided not to place her other child in Rollins' care. Id. at 24. Rollins agreed her hours of availability for K.L.P. would start around 8:00 AM and last until between 1:00 and 3:00 PM. Id. at 27. The rate for K.L.P.'s care was to include meals. Id. at 34. Rollins did agree to be available to receive K.L.P. every weekday, however she qualifies this was meant to be an as-needed availability while Lovejoy ran errands during the day and if K.L.P. wished to be in her care. Id. at 48.

K.L.P. began attending care in Rollins' home on June 24, 2013. Id. at 26. During her first weekdays in Rollins' care, June 24–28, 2013, K.L.P. attended only four days, missing a day that week. Id. at 27. During the second week in Rollins' care, July 1–5, 2013, K.L.P. attended the balance of the weekdays but did not attend July 4, 2013. Id. at 20. During K.L.P.'s final week in the care of Rollins, July 8–12, 2013, K.L.P. was in Rollins' care all weekdays except for one which was missed for illness. Id. at 32. After the first week of care, Lovejoy paid Rollins $125 despite the fact K.L.P. had missed at least one day. ECF No. 19, Ex. 4 at 25–26. After the

second week of care, Lovejoy paid Rollins paid Lovejoy $125 despite the fact K.L.P. may have been absent as many as two days. Id. Lovejoy intended to pay Rollins an additional $125 for the third week of care but did not do so after the incident occurred. Id. at 20.

Prior to the incident, both Rollins and Lovejoy expected K.L.P. to continue attending care at Rollins' home during weekdays for the short term, however, Rollins claimed that she expected to discontinue care at some point in 2013 to care for her mother in hospice and Lovejoy indicated K.L.P. may not wish to continue attendance much longer. ECF No. 19, Ex. 1 at 43; see also ECF No. 19, Ex. 4 at 19. On July 12, 2013, while K.L.P. was at Rollins' house, K.L.P. was injured when the Rollins family dog, Champ, allegedly bit her causing injury. Id. at 31–32. After the incident on July 12, 2013, all care of K.L.P. was discontinued.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. STANDARD OF REVIEW

State Farm moves for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Kelley v. United Parcel Service, Inc., 2013 WL 2480211, at *1 (4th Cir. June 11, 2013). The moving party has the initial burden of showing that no genuine dispute of material facts exists; however, "[o]nce a [moving party] makes a properly supported motion for summary judgment, the burden shifts to the [nonmoving party] to set forth specific facts showing that there is a genuine issue for trial." Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995).

When reviewing a motion for summary judgment, the Court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir.1992), cert. denied, 507 U.S. 918 (1993); see also EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). However, "only 'reasonable' inferences from the evidence need be considered by the court." Sylvia Development Corp., 48 F.3d at 818. The Court of Appeals for the Fourth Circuit has elaborated on this principle, indicating that "[p]ermissible inferences must still be within the range of reasonable possibility, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (quoting Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958) cert denied, 358 U.S. 908 (1958)). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." Id. (citing Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

Thus, "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case," to defeat an otherwise properly supported motion for summary judgment. Kelley v. United Parcel Service, Inc., 2013 WL 2480211, at *1 (4th Cir. June 11, 2013) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)). "Accordingly, to deny a motion for summary judgment, '[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict.'" Standard Fire Ins. Co. v. Armstrong, 2013 WL 1933828, at *2 (E.D. Va. May 8, 2013) (quoting Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir.1995).

A federal court hearing a state law claim must apply the forum state's substantive law. See In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988) (citing Klaxon Co. v.

10

Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941)). In addition, a federal court hearing a state law claim must apply state law in accordance with the forum state's choice of law rules. See In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)).

Virginia law provides that "generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage." Buchanan v. Doe, 246 Va. 67, 70-71 (1993) (citing Lackey v. Virginia Sur. Co., 209 Va. 713, 715 (1969)); see also Seabulk Offshore, Ltd. V. American Home Assur. Co., 377 F.3d 408, 418-19 (4th Cir. 2004). It is undisputed that the State Farm Homeowners Policy in dispute was issued and delivered to Rollins in Virginia, thus, Virginia substantive law governs the insurance coverage questions.

In Virginia, "It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." Barber v. VistaRMS, Inc., 634 S.E.2d 706, 712 (Va. 2006). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly. " City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 628 S.E. 2d 539, 541 (Va. 2006). Additionally,

> "[i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policy-holders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed mostly strongly against the insurer.

PBM Nutritionals, LLC v. Lexington Ins. Co., 283 Va. 624, 633-34, 724 S.E.2d 707, 713 (2012) (quoting Copp v. Nationwide Mut. Ins. Co., 279 Va. 675, 681, 692 S.E.2d 220, 223 (2010)).

However, "[u]nder Virginia law, an insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language. Additionally, 'where the exclusion is not ambiguous, there is no reason for applying the rules of *contra proferentem* or liberal construction for the insured.'" TravCo Ins. Co. v. Ward, 284 Va. 547, 553, 736 S.E.2d 321, 325 (2012) (quoting PBM Nutritionals, 283 Va. at 634, 724 S.E.2d at 713 (internal citation omitted)).

### B. DISCUSSION

#### 1. The Terms in the Homeowners Policy are Unambiguous and Can Be Interpreted Upon the Plain Meaning

At issue in the present suit are three major terms within the same category of care provided for children: child care services, occasional child care services, and babysitting. The terms child care services and occasional child care services are within the child care services exclusion of the Homeowner's Policy found at Section II (1)(i). ECF No. 1, Ex. 1 at 17. Babysitting is used in the business pursuits exclusion of the policy contained in Section II (1)(b). Although all three terms are related, applying Virginia law, "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." City of Chesapeake, 628 S.E. 2d at 541. As such, this Court can only conclude that when drafting the policy the insurer intended that each term be given a separate and distinct meaning.

The parties, in briefing and hearing, have provided a number of definitions for these disputed terms; however, it falls to the Court to interpret these terms so far as they are unambiguous in light of their "usual, ordinary, and popular meaning." Id. In determining these meanings the Court is influenced by the dictionary definition. According to the Oxford Dictionary,

12

"Child care" is defined as, "The care of children by a day-care center, babysitter, or other provider while parents are working." Child care, Oxford Dictionary (last visited May 5, 2016), http://www.oxforddictionaries.com/definition/american_english/child-care.

"Service" is defined as "The action of helping or doing work for someone." Service, Oxford Dictionary (last visited May 5, 2016), http://www.oxforddictionaries.com/definition/american_english/service?q=services#service__4.

"Occasional" is defined as "Occurring, appearing, or done infrequently and irregularly." Occasional, Oxford Dictionary (last visited May 5, 2016), http://www.oxforddictionaries.com/definition/american_english/occasional.

"Babysitting" is defined as "look[ing] after a child or children while the parents are out." Babysit, Oxford Dictionary (last visited May 5, 2016), http://www.oxforddictionaries.com/definition/american_english/babysit?q=babysitting.

However, so far as the construction of the policy these definitions appear to lack some of the popular meaning. Therefore, the Court is also influenced existing Virginia statute in which laying out the powers to localities to regulate, "child care services" is defined as, "means provision of regular care, protection and guidance to one or more children not related by blood or marriage while such children are separated from their parent, guardian or legal custodian in a dwelling not the residence of the child during a part of the day for at least four days of a calendar week." Va. Code § 15.2-914. Although this definition does not establish the threshold at which licensure is necessary for the care of children in the home, it does establish a better definition of what formalized child care services means in popular usage. Clearly, the services provided to K.L.P. and P.R.H. would fit within this statutory definition of child care services.

The defendants in this matter continuously contended that the care provided by Rollins was mere babysitting, which was excepted from exclusion within the business pursuits section of the policy. See ECF No. 23, ECF No. 24. Specifically, K.L.P. suggests the Court adopt the meaning of babysitting as defined by Supreme Court of Alabama, which the court also found influential in understanding the term babysitting: "In ordinary parlance, the 'babysitter' is one

13

employed as a matter of convenience by parents to stay with a child or children, so that they may for a few hours seek their pleasure, or tend to affairs external to the home. This differs from day-in, day-out child care for an indefinite period...." Stanley v. Am. Fire & Cas. Co., 361 So. 2d 1030, 1032 (Ala. 1978). The Court is persuaded by this definition and agrees that babysitting is clearly distinguished from day-in, day-out child care services which are marked by their regularity and indefiniteness as separated from care which is requested for a clear, limited time period of a few hours.

When placed in conjunction all these definitions show the Court that the terms at issue are not ambiguous, but rather, may be interpreted upon their plain meaning. There are not two constructions of the term child care services which are equally plausible despite the protestation of the defendants. PBM Nutritionals, 283 Va. at 633–34. Child care services are clearly the provision of care for unrelated children outside of the child's home, which occurs for an unspecified period and above some threshold of frequency more regularly than once per week. When placed in context with the exception for occasional child care services in the same exclusion, it can be concluded that occasional child care services fit within the definition of child care services but occur on a less frequent basis. Unfortunately, K.L.P. and P.R.H. were neither irregular nor infrequent users of Rollins' services; as such, the care provided to K.L.P. most certainly fits within this unambiguous child care services exclusion of the Homeowners Policy.

Against the argued restrictive reading of the defendants, child care services need not be provided in a formal day care center or in a licensed agency to fall within the exclusion of the Homeowners Policy, as a broad exclusion was clearly intended by the insurer. In this conclusion, this Court is buoyed by the analysis in the case Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc., where the court in interpreting an insurance exclusion under Virginia law held that where the insurer had failed to insert exception language for indoor

14

pollution to the pollution exclusion, "the Pollution Exclusion clause is sweeping, excepting *both* environmental and indoor pollution occurrences from coverage." Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc., 474 F. Supp. 2d 779, 797 (E.D. Va. 2007). Similarly, this Court will not imply the insertion of language into the Child Care Exclusion as it is written to reduce the broadness of the exclusion.

### 2. The Care Provided by Rollins is Within the Plain Meaning of Child Care Services and was More Than Occasional

Given the clear, unambiguous language of the policy regarding the exclusion for child care services, this Court simply must find that Rollins' care for K.L.P. excluded. Rollins provided care for K.L.P. in Rollins home, outside of the presence of K.L.P.'s parents or guardians. ECF No. 19, Ex. 1 at 20–27. Neither K.L.P. nor her mother were related to Rollins. This child care was arranged to last an indefinite time with the general expectation that it would occur between 8:00 AM and 2:00 PM. Id. This child care was not occasional, it occurred regularly almost every weekday for an average of four days per week. Id. This care was part of an ongoing arrangement between Rollins and Lovejoy and was expected to continue regularly for the near future. Id. While the arrangement between Lovejoy and Rollins for the care of K.L.P. had only been ongoing for three weeks, the payment of $125 a week regardless of absences seems to be the actual consideration for the contract. Id. At the time that K.L.P.'s family responded to Rollins' posting, she had been providing consistent non-occasional child care services to P.R.H., another unrelated child, for nearly three months. Id. at 17. Both P.R.H. and K.L.P. were in Rollins' care on the date of the injury. ECF No. 24, Ex. 2 at 8.

There are no genuine disputes as to the material facts regarding the child care services provided by Rollins or the fact that K.L.P.'s injuries arose while she was in the care of Rollins because of child care services which were not occasional. Under the plain meaning of the

15

16

Homeowners Policy, K.L.P. and Lovejoy's potential claims are most certainly excluded under the unambiguous child care services exclusion of the Homeowners' Policy. State Farm is entitled to judgment as a matter of law under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. Accordingly, this Court **GRANTS** the Motion for Summary Judgment. ECF No. 18.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record and Ms. Tracie Lovejoy.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
May 12, 2016